ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| JUAN HOWE HERNÁNDEZ y/o CLARYSSA CORREA MÁRQUEZ<br><br>Recurrido<br>v.<br><br>CONSEJO DE TITULARES DEL CONDOMINIO TORRE SAN MIGUEL; JUNTA DE DIRECTORES CONDOMINIO TORRE SAN MIGUEL<br><br>Recurrente | **KLRA202400668** | *REVISIÓN ADMINISTRATIVA* procedente de San Juan<br><br>Caso Núm.:<br>C-SAN-2022-0011673<br><br>Sobre:<br>Ley de Condominios |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 13 de enero de 2025.

Comparece ante este foro el Consejo de Titulares y la Junta de Directores del Condominio Torre San Miguel (Junta de Directores o "parte recurrente") y nos solicitan que revisemos una *Resolución Sumaria* emitida por el Departamento de Asuntos del Consumidor (DACo), notificada el 1 de octubre de 2024. Mediante el referido dictamen, el DACo declaró parcialmente *Ha Lugar* la *Querella* instada por el Sr. Juan Howe Hernández y la Sra. Claryssa Correa Márquez ("los recurridos"). En consecuencia, ordenó a la Junta de Directores a entregar ciertos documentos, y a pagar $1,000.00 en concepto de honorarios de abogado.

Por los fundamentos que se exponen a continuación, **DESESTIMAMOS** el recurso por falta de jurisdicción, por prematuro.

Número Identificador
SEN2025 _____

**I.**

El 14 de julio de 2022, los recurridos presentaron una *Querella* ante el DACo en contra de la parte recurrente.[1] El 29 de julio de 2022, el DACo notificó la *Querella*, a la cual le fue asignado el número C-SAN-2022-0011673.[2] En específico, los recurridos alegaron lo siguiente:

> Desde el 4 de marzo de 2022 estamos esperando que la Junta de Directores del Condominio Torre de San Miguel nos haga entrega de las copias de los documentos solicitados el 25 de febrero de 2022, según la Orden 2022-001, firmada por el Secretario del Departamento de Asuntos del Consumidor de PR (DACo, en adelante), el Lcdo. Edan Rivera Rodríguez.

Posteriormente, el 11 de agosto de 2022, la Junta de Directores presentó su *Contestación a Querella*. En esencia, negaron las alegaciones imputadas.

Examinados los argumentos de las partes, el 1 de octubre de 2024, el DACo notificó su *Resolución Sumaria*.[3] Como parte de dicha resolución, emitió tres (3) determinaciones de hechos. En su primera (1) determinación de hechos, desglosó todos los documentos que entendió que la controversia del caso estuvo trabada, en esencia, son los siguientes:

(I) Administración,
(II) Estados de Cuentas de Bancos,
(III) Contratos, Reportes, Certificaciones, Daños, Ingenieros Estructurales,
(IV) Seguros del Condominio Torre San Miguel,
(V) Antenas de Telecomunicaciones e Internet,
(VI) Bonos de Navidad,
(VII) Seguridad,
(VIII) Transiciones de Juntas de Directores (2015 al Presente),
(IX) Contratos del Nuevo Generador Eléctrico,
(X) Estación de Autos Eléctricos,
(XI) Caso: Corte de Árbol,

---

[1] *Querella Urgentísima y a Otros Extremos, Solicitando Documentos, Certificaciones y Documentos Legales, en Violación a la Orden 2022-001*, págs. 61-78 del apéndice del recurso.
[2] *Notificación de Querella*, págs. 59-60, 79-80 del apéndice del recurso.
[3] *Resolución Sumaria*, págs. 11-42 del apéndice del recurso.

(XII) Certificación que el Sr. Carlos S. Figueroa, Ex Presidente y actual colaborador de la Junta de Directores, está autorizado a tener tres estacionamientos,
(XIII) Certificación de Documento Legal,
(XIV) Proyecto de Remodelación de Oficina y Caseta de Seguridad,
(XV) Compensaciones y Beneficios,
(XVI) Cambios en la Escritura Matriz,
(XVII) Remodelaciones en el gimnasio,
(XVIII) Gastos de Reparaciones y Préstamos Solicitados, 2019
(XIX) Reemplazo de Cámaras de Seguridad,
(XX) Número de Querella,
(XXI) Horas de Trabajo Extendidas de la Administradora,
(XXII) Otros Contratos,
(XXIII) Enmiendas (2022) al Nuevo Reglamento del Condominio Torre San Miguel (2021),
(XXIV) Multas,
(XXV) Reglamento Asambleas Virtuales,
(XXVI) Provea Evidencia de Multas durante el Año 2021-22,
(XXVII) Facturas por Servicios Profesionales,
(XXVIII) Compra de Lámpara,
(XXIX) Pagos por Aumento de Luz.

2. Lo anterior recoge íntegramente los documentos solicitados.

3. Que de la adjudicación surge que hubo una gran cantidad de documentos que de su faz eran divulgables a favor de la parte querellante. Encontramos en temeridad a la parte querellada.

Así las cosas, el DACo determinó que no había controversia esencial sobre ningún hecho material, por lo que, procedía emitir una resolución resolviendo la reclamación de forma sumaria. Es por ello, que declaró *Ha Lugar* parcialmente la querella, y ordenó la divulgación de la mayoría de los documentos solicitados. Añadió que, aquella solicitud que no estuvo fundamentada había sido denegada.

Finalmente, el DACo concluyó que habían documentos con derecho a ser divulgados, sin embargo, la parte recurrente actuó con temeridad, obstinación y contumacia al no atender la reclamación de los recurridos, obligándolos a continuar en un litigio incensario. Por lo tanto, les ordenó a que pagaran $1,000.00 en concepto de honorarios de abogado.

En desacuerdo, el 21 de octubre de 2024, la Junta de Directores presentó una *Moción en Solicitud de Reconsideración*.[4] En esencia, alegaron que la determinación del DACo resultaba en un abuso del derecho propietario. Indicaron que, los recurridos debieron justificar la razón para tener dicha cantidad de documentos. A su vez, que toda acción que pudieron tener los titulares en su contra prescribía por el paso de dos (2) años. En cuanto a la imposición de los honorarios de abogados, sostienen que no procedían, debido a que los recurridos no prevalecieron en el pleito.

Ese mismo día, el DACo acogió dicha moción, por medio de un correo electrónico en el que indicó lo siguiente: "[l]a moción presentada estará siendo evaluada por el personal designado por DACO próximamente."[5]

No obstante, no surge de los autos del expediente, que a la fecha en que fue presentado el recurso de epígrafe, el DACo haya emitido una orden o resolución disponiendo finalmente de dicha solicitud de reconsideración.

**II.**

**-A-**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) establece en su sección 3.15 el término que posee una agencia administrativa para acoger y atender una moción de reconsideración. En lo pertinente dispone:

> La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde

---

[4] *Moción en Solicitud de Reconsideración*, págs. 1-8 del apéndice del recurso.
[5] *Notificación de presentación de moción*, pág. 10 del apéndice del recurso.

la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. **La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla.** Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. **Si la agencia acoge la moción de reconsideración pero deja de tornar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días** salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales. (Énfasis nuestro).

[…]. 3 LPRA sec. 9655.

### -B-

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio de Puerto Rico y otros*, 211 DPR 521 (2023); *MCS Advantage, Inc. v. Fossas Blanco y otros*, 211 DPR 135 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384 (2022). Es por ello que, la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020).

Por tal razón, es norma reiterada que los tribunales tenemos que ser celosos guardianes de nuestra jurisdicción y tienen el deber ineludible de auscultar dicho asunto con preferencia sobre cualesquier otro. *Pueblo v. Torres Medina*, 211 DPR 950 (2023).

De ese modo, la ausencia de jurisdicción trae varias consecuencias, tales como: (1) que no sea susceptible de ser subsanada; (2) las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso; y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Allied Mgmt. Group v. Oriental Bank*, supra.

En ese sentido, en reiteradas ocasiones el Tribunal Supremo de Puerto Rico ha expresado que los tribunales tenemos el deber de proteger nuestra jurisdicción sin poseer discreción para asumirla donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022). A esos efectos, las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia. *Íd.*; *Fideicomiso de Conservación de Puerto Rico y para la Naturaleza, Inc. v. Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio de Puerto Rico y otros*, supra.

Una de las instancias en las que un foro adjudicativo carece de jurisdicción es cuando se presenta un recurso prematuro, puesto que su presentación carece de eficacia y no produce ningún

efecto jurídico, ya que en ese momento o instante en el tiempo todavía no ha nacido autoridad judicial o administrativa para acogerlo. *Torres Martinez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008). Sobre este particular, nuestro más Alto Foro ha expresado:

> Un recurso prematuro, al igual que uno tardío, priva de jurisdicción al tribunal al cual se recurre. No obstante, existe una importante diferencia en las consecuencias que acarrea cada una de estas desestimaciones. Desestimar un recurso por ser tardío priva fatalmente a la parte de presentarlo nuevamente, ante ese mismo foro, o ante cualquier otro. En cambio, la desestimación de un recurso por prematuro le permite a la parte que recurre volver a presentarlo, una vez el foro apelado resuelve lo que estaba ante su consideración. *Yumac Home v. Empresas Masso*, 194 DPR 96, 107 (2015).

Finalmente, es necesario señalar que la Regla 83 (B)(1) y (C) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83 (B)(1) y (C), disponen lo siguiente sobre la desestimación de recursos carentes de jurisdicción:

> (B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:
>
> > (1) que el Tribunal de Apelaciones carece de jurisdicción;
> >
> > [...].
>
> (C) El Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualesquiera de los motivos consignados en el inciso (B) precedente.

### III.

Según surge del caso de autos, la parte recurrente presentó una *Moción en Solicitud de Reconsideración* ante el DACo el 21 de octubre de 2024. Ese mismo día, el DACo mediante correo electrónico emitió una *Notificación de presentación de moción*, mediante la cual indicaba que

"[l]a moción presentada estará siendo evaluada por el personal designado por DACO próximamente". No obstante, el 4 de diciembre de 2024, la parte recurrente presentó el recurso de *Revisión de Decisión Administrativa* que nos ocupa.

Conforme al derecho antes expuesto, una agencia tiene quince (15) días desde que se presenta una moción de reconsideración para considerarla. No obstante, si la rechaza de plano o no actúa dentro de los quince (15) días, comenzará a transcurrir el término para que las partes acudan en revisión judicial. De otra parte, si la agencia acoge la moción de reconsideración, tendrá noventa (90) días para resolverla. En el caso de que la agencia deje de tomar alguna acción dentro de los noventa (90) días y no indique justa causa que amerite prorrogar el término por treinta (30) días adicionales, perderá jurisdicción sobre la controversia y comenzará a correr el término para que las partes acudan en revisión judicial. Secc. 3.15 de la LPAU, *supra*.

En el presente caso, la notificación emitida por el DACo el 21 de octubre de 2024, indicaba que la moción presentada estaría siendo evaluada próximamente, por lo que, de esa forma la acogió como una petición de reconsideración. Por ello, quedó interrumpido el término para solicitar revisión administrativa ante este foro apelativo. Consecuentemente, como aún no ha transcurrido el término de noventa (90) días desde que la referida moción fue presentada, el DACo conserva jurisdicción sobre la misma.

**IV.**

Por los fundamentos antes expuestos, **DESESTIMAMOS** el recurso de epígrafe por falta de jurisdicción, por

prematuro. En consecuencia, devolvemos el asunto ante el Departamento de Asuntos del Consumidor para la continuación de los procedimientos.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones